# In the United States Court of Federal Claims

## No. 14-723C
### (Bid Protest)
### (Filed: May 11, 2015)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
|  | \* | **Post-award Bid Protest; Supplementation of the Record; United States Agency for International Development Mission Order 201.05; Ineligibility Determination.** |
| **UNIQUE BUILDERS CONSTRUCTION CO.,** | \* | |
|  | \* | |
| **Plaintiff,** | \* | |
|  | \* | |
| **v.** | \* | |
|  | \* | |
| **THE UNITED STATES,** | \* | |
|  | \* | |
| **Defendant.** | \* | |
|  | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Michael A. Gordon, Michael A. Gordon, PLLC, 1629 K Street, NW, Suite 300, Washington, D.C. 20006, for Plaintiff. Fran Baskin and Jason T. Edwards, Michael A. Gordon, PLLC, 1629 K Street, NW, Suite 300, Washington, D.C. 20006, Of Counsel. Richard L. Moorhouse, L. James D'Agostino, and Jozef S. Przygrodzki, Greenberg Traurig LLP, 1750 Tysons Boulevard, Suite 1200, McLean, VA 22102, Of Counsel.

Joyce R. Branda, Robert E. Kirschman, Jr., Deborah A. Bynum, and William P. Rayel, United States Department of Justice, Civil Division, Commercial Litigation Branch, PO Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant.

---

## OPINION AND ORDER

---

**WILLIAMS**, Judge.

In this post-award protest, Plaintiff, Unique Builders Construction Co. ("UBCC"), challenges the Government's determination that UBCC was ineligible to receive a contract for road construction in Afghanistan pursuant to the United States Agency for International Development's ("USAID") Mission Order 201.05. This matter comes before the Court on the

---

[1] The Court issued this opinion under seal on April 29, 2015, and directed the parties to file proposed by redactions by May 8, 2015. The Court publishes this Opinion indicating redactions and the errata corrected. Redactions are indicated by asterisks "[***]."

parties' cross-motions for judgment on the Administrative Record ("AR"). This case involves classified material which is discussed in a classified addendum.  The Court denies UBCC's protest as UBCC failed to demonstrate that USAID's ineligibility determination was arbitrary, capricious, or illegal.

## Findings of Fact[2]

### The Solicitation

On November 10, 2013, USAID issued solicitation number SOL-306-14-000003, requesting proposals from pre-qualified organizations for the construction of the final 25 kilometers of the Gardez-to-Khost road, a 101-kilometer road in the Paktya and Khost provinces of eastern Afghanistan. [3]  AR 40, 2470.  Widening, paving, and repairing this road is part of USAID's Afghanistan Infrastructure Reconstruction Program, which aims to provide a high-speed, all-weather road to link Afghanistan with "major trading routes to Pakistan."  AR 2470.  By November 10, 2013, all but 25 kilometers of the road work, specifically kilometers 27-30, 36-50, and 57-65, had been completed. AR 1834, 1838.

The deadline for proposals was December 10, 2013. Award of this contract in an amount between $25,000,000 and $38,000,000 was to be made on a best value basis, considering technical factors, past performance, and price.  AR 40.

The solicitation required that work be completed no more than 540 days after the notice to proceed. AR 1834. The project required the construction of "an all asphalt bituminous cement road[], bridges, causeways, culverts, retaining walls, pavements, drainage, etc.," with the contractor ensuring that the road would remain passable at all times of the year.  AR 1839.  The contractor was to provide security for its personnel, laborers, and equipment and engage the services of a de-mining subcontractor to remove landmines and unexploded ordinance. AR 1842-1843, 1859.

In the solicitation, USAID required compliance with Mission Order 201.05.  The purpose of this Mission Order is to "describe procedures intended to minimize the risk" that USAID programs "do not provide, even inadvertently, support to Prohibited Parties . . . ." AR 1930, 1794. A "Prohibited Party" is defined as

---

[2]     These findings of fact are based on the AR.  Additional findings of fact, based upon a classified AR ("CAR"), are addressed in the classified addendum.

[3]     On September 27, 2012, USAID began the procurement process by posting pre-qualification notices setting October 22, 2012, as the closing date for submission of all proposals. AR 2470.  After receiving proposals, USAID deemed nine firms pre-qualified and released a solicitation to the pre-qualified firms. AR 2471.  However, Procurement Integrity Act violations were discovered, and this solicitation was cancelled. Id.  Subsequently, USAID issued the instant solicitation to the pre-qualified firms.  Id.

an individual or entity that USAID knows or has reasonable grounds to suspect (i) supports or has supported terrorist activities, (ii) is or has been engaged in terrorist activities, (iii) poses a significant risk of committing terrorist activities, or (iv) is or has been engaged in other activities which are contrary to the national security or foreign policy interests of the United States.

AR 1795.

This Mission Order resulted from the Government's concern that United States reconstruction funds for Afghanistan were being diverted to Prohibited Parties. Id. Mission Order 201.05 requires the vetting of all non-U.S. contractors or subcontractors receiving contract awards of greater than $25,000 and their "key individuals" who are not U.S. citizens or legal permanent residents. Key individuals include lead officers or anyone who effectively controls the organization. AR 1799, 1801. After an organization submits its vetting data, including business licenses and biographical information for its key individuals, USAID's Vetting Support Unit ("VSU") makes an eligibility determination. AR 1802. An organization deemed ineligible cannot receive the award, but is not precluded from applying for future awards. AR 1808.

**Evaluation and Award**

USAID received proposals from eight offerors, including UBCC and Mashriq Engineering Construction Company ("MECC"), which had worked on other sections of the Gardez-to-Khost road. AR 2471-73. According to USAID, UBCC's [***]. AR 2461, 2463.[4] UBCC identified Major Matthew Myers as a reference. Major Myers is employed with the United States Army and worked with UBCC during five road projects in Afghanistan's Kunar province from 2007-2009. AR 2137. On January 16, 2014, Major Myers provided an excellent recommendation, relating that the President of UBCC had accompanied him on a dangerous seven-kilometer foot-patrol mission to observe the road quality and construction during a previous project. AR 2135-39.

In March 2014, USAID determined that four offerors, UBCC, MECC, [***], and [***], were in the competitive range. AR 2473. USAID conducted discussions with these offerors in March 2014. All four proposals received an "outstanding" technical rating. AR 2474. UBCC submitted the lowest revised price of $[***], whereas MECC submitted the highest revised price of $32,763,736.00. Id. As all the proposals received an outstanding technical rating, UBCC would normally have been selected as the lowest-priced offeror. AR 2475. However, UBCC and the two other offerors were deemed ineligible for award pursuant to Mission Order 201.05. USAID awarded MECC the contract on June 26, 2014. AR 2475-76.

---

[4]      In the vetting documents submitted with UBCC's proposal, [***] is not listed. AR 2019. [***] is also not included in UBCC's organizational chart. AR 1988. The record contains variations in spellings of these names, but the Court will use these versions.

**UBCC's Ineligibility**

On May 15, 2014, after reviewing the vetting information submitted by UBCC, USAID's Vetting Support Unit sent Roy Plucknett, the Deputy Mission Director for USAID Afghanistan, a memorandum requesting a final vetting determination for UBCC.  AR 2466. The Vetting Support Unit stated that the USAID Office of Security ("Security Office") had identified derogatory information about UBCC and recommended that it be deemed ineligible for the award.  Id.  The Vetting Support Unit also stated that there were viable alternatives to UBCC and that failure to have a contractor on the Gardez-to-Khost road could cause political instability and potential violence.  AR 2467.  Pursuant to Mission Order 201.05, the memorandum provided Mr. Plucknett with the choice of either concurring with that determination or not concurring with the Security Office's determination and referring the matter to USAID's Assistant to the Administrator, Office of Afghanistan and Pakistan Affairs.  Id. Mr. Plucknett concurred with the Security Office's determination and concluded that UBCC was ineligible to receive the award. AR 2468.

On July 8, 2014, USAID informed UBCC that it had been found ineligible in accordance with Mission Order 201.05 and that MECC had been selected.  AR 2479.  USAID also informed UBCC that it vets potential contractors by award and that UBCC could apply for future awards and would be re-reviewed again.  Id.

On July 13, 2014, UBCC requested a debriefing.  AR 2480.  USAID provided a written debriefing on July 15, 2014, but did not provide any additional information about the ineligibility determination.  AR 2481.  UBCC protested at the Government Accountability Office ("GAO") on July 21, 2014, but the GAO dismissed Plaintiff's protest on August 12, 2014, after it filed its protest in this Court.  USAID overrode the GAO's stay of MECC's contract performance. Defendant represents that MECC has begun work on the road and currently has [***] employees mobilized.  Def. Mot. at 7.

**Discussion**

**Plaintiff's Motion to Supplement the Administrative Record**

As the United States Court of Appeals for the Federal Circuit recognized in Axiom Resource Management, Inc. v. United States, supplementation of the record in a bid protest is permissible when "'the omission of extra-record evidence precludes effective judicial review.'" 564 F.3d 1374, 1380 (Fed. Cir. 2009) (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (2000), aff'd 398 F.3d 1342 (Fed. Cir. 2005)).

In its motion to supplement the AR, Plaintiff seeks to add an undated statement of Layaqutullah Babaker Khil, "the member of the Afghan Parliament from Khost Province, who has knowledge of the facts of the construction of the Gard[e]z to Khost road."  Pl. Mot. to Suppl. at 1.  The document consists of one page in a foreign language and a second page purporting to be a translation into English.  Id. at Ex. 1.  Although Plaintiff characterizes the document as an affidavit, an affidavit must be made under oath and contain the signatures of both the affiant and an officer authorized to administer oaths in the location where signing occurred.  See Ham Invs.,

<u>Inc. v. United States</u>, 89 Fed. Cl. 537, 550 n.8 (2009) (citing 2A C.J.S. <u>Affidavits</u> § 25 (2009); <u>see also</u> 3 Am. Jur. 2D <u>Affidavits</u> § 9 (2009)).  There is no indication in the translated version that Mr. Khil's statement was made under oath.

The translated page states:

> To: The Government of the United State of America.
> I Layaqutullah Babaker Khil member of the Afghan Parliament from Khost Province.
> As I know and discussed with the Elders and Local community of Khost province.
> The Elders and local community of Khost province along the road are not satisfied from the construction work of MECC Company for Gardiz to Khost road.
> We and the Elders and local community always raised this issue with Khost Governor and complained to him (Abdul Jabar Naimi), but he is interested with MECC Company and does not show interest with UBCC Company.
> He also said to many people that I do not want UBCC Company here.
> Therefore, it confirms his favor to MECC Company and he did not mention the reason of his interest.
>
> Layaqullah Babaker Khil
> (Member of Afghan Parliament from Khost Province)

Pl. Mot. to Suppl. at Ex. 1.  The English document contains the stamp of the "Shukran Sabil Translation Center."  <u>Id.</u>

Plaintiff argues that this document should be included in the AR because "without it, the Court will be missing relevant information that can explain why USAID took the actions in finding all proposals, but MECC's, ineligible," because it "provides the Court with information about the pressures that may have been present on USAID from the local government officials in Afghanistan," and because it identifies the "attitude of the local governor towards the offerors." <u>Id.</u> at 1-2.  In response, Defendant posits that Plaintiff is attempting to claim bias by suggesting that USAID deemed Plaintiff ineligible and MECC eligible due to the influence of the Governor of Khost. Def. Opp'n to Mot. to Suppl. at 3. Plaintiff avers that the Governor may have applied pressure on USAID to eliminate UBCC from the competition and award to MECC, relying only on the unsworn undated "affidavit" of Mr. Khil.  Pl. Mot. to Suppl. at 1-2.  If, as Plaintiff suggests, USAID procurement officials permitted themselves to be swayed by a local Afghan official and found a way to select an awardee the Afghan official favored -- throwing United States procurement law to the wind -- this allegation is tantamount to bad faith.

Like bias, allegations of bad faith must rest on a strong evidentiary footing to warrant supplementation of the AR.  <u>L-3 Commc'ns Integrated Sys., L.P. v. United States</u>, 91 Fed. Cl. 347, 356 (2010); <u>Int'l Res. Recovery, Inc. v. United States</u>, 61 Fed. Cl. 38, 43 (2004) (granting supplementation of the AR because the plaintiff's bad faith and bias allegations were "sufficiently well grounded," with evidence that the contracting officer had purposely failed to

tell evaluators that the company's prior termination for default had been converted into a termination for convenience).   Other than the unsworn "affidavit" of Mr. Khil, there is no evidence in the record to support the undue influence or bad faith on the part of USAID procurement officials.   There is no other evidence that the Governor of Khost Province had any involvement in the procurement or vetting process, or that the Governor had any contact with USAID employees. The statement of Mr. Khil does not constitute a "strong evidentiary footing" for the bad faith allegation -- it does not meet basic requirements for an affidavit and lacks the indicia of reliability. See NCL Logistics Co. v. United States, 109 Fed. Cl. 596, 613 (2013) (denying supplementation of administrative record with hearsay); L-3 Commc'ns Integrated Sys., L.P., 91 Fed. C1. at 356; Ham Invs., Inc., 89 Fed. Cl. at 550 n.8.

Plaintiff has not provided any reliable evidence that USAID employees knew about the opinions of the Governor of Khost, much less that they deemed Plaintiff ineligible for any reason unconnected with Mission Order 201.05.   Vague generalizations of "pressures that may have been present" during the procurement process do not warrant supplementation of the AR. Therefore, the Court denies Plaintiff's motion.

## Defendant's Unopposed Motion to Amend the Administrative Record

In this motion, Defendant requests that the Court amend the AR to add the Government's independent cost estimate ("IGCE"), USAID's price analysis of initial proposals and final proposals, and the GAO decision dismissing Plaintiff's GAO protest. Defendant seeks to add the IGCE and USAID's price analysis to the AR because Plaintiff challenges this price analysis and argues that USAID knew MECC "had proposed a price substantially higher than market price by millions of dollars [***]." Pl. Reply at 4.   Further, Plaintiff asserts that USAID improperly evaluated MECC's price because "[i]nstead of engaging in additional discussions, to avoid scrutiny that might have revealed its improper disparate treatment, USAID masked MECC's significantly higher price by intentionally removing [***] from its price realism 'evaluation' in the source selection decision, and compared . . . MECC's price [***] only with the [IGCE]." Id. Plaintiff alleges that due to the deficient price realism assessment, "award was made to MECC at a multi-million dollar price premium." Id.

Defendant correctly denominates its motion as one to "amend" not "supplement" the AR, as the materials the motion is seeking to add should have been included in the AR in the first place.   As Defendant notes, the GAO decision is required to be included in the AR pursuant to 31 U.S.C. § 3556. See 31 U.S.C. § 3556 (2012) (stating that any decision or recommendation of the Comptroller General under "subchapter [31 USCS §§ 3551 et seq.] with respect to such procurement or proposed procurement shall be considered to be part of the agency record subject to review").   So too, consistent with Appendix C to the Court of Federal Claims Rules, evaluation materials should be part of the AR in a post-award bid protest. RCFC App. C part VII.

**The Parties' Cross-Motions for Judgment on the AR**

**Standard of Review for Bid Protests**

The Court evaluates bid protests pursuant to the Administrative Procedure Act's standard of review for an agency action.  Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  Therefore, this Court will not disturb an agency's procurement decision unless the Court finds that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2012); see Adams & Assocs. v. United States, 741 F.3d 102, 105-06 (Fed. Cir. 2014).  An agency action is arbitrary and capricious when the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Ceres Envtl. Servs., Inc. v. United States, 97 Fed. Cl. 277, 302 (2011) (alterations in original) (quoting Ala. Aircraft Indus., Inc.—Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009)). An "agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)).

Under Rule 52.1, the parties are limited to the AR, and the Court makes findings of fact as if it were conducting a trial on a paper record.  See Bannum, 404 F.3d at 1356-57.  Looking to the AR, the Court must determine whether a party has met its burden of proof based on the evidence in the record.  Id. at 1357. The Court may overturn an agency's decision if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure."  Centech Group, Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting Impresa Construzioni, 238 F.3d at 1332).

**Plaintiff Failed to Establish a Violation of Statute or Regulation or Arbitrary and Capricious Agency Action**

The challenged eligibility determination is akin to a responsibility determination, in that both necessarily consider aspects of a potential awardee's integrity and ethics.  The purpose of Mission Order 201.05 is to ensure that USAID funds do not end up in the hands of Prohibited Parties, persons or entities linked to terrorist activities or other activities contrary to United States national security or policy interests.  In a similar vein, a responsibility determination seeks to avoid awarding a Government contract to a party that cannot perform due to lack of integrity or capability, poor business ethics, or financial or technical problems.  See 48 C.F.R. 9.104-1 (2012). Both determinations are aimed at ensuring that only trustworthy and capable contractors are deemed "responsible" or "eligible" to receive and perform Government contracts. Because of the similar purposes of these contractor qualification requirements and the dearth of precedent on eligibility determinations under USAID Mission Order 201.05, this Court will look to cases reviewing responsibility determinations.

7

Importantly, "[c]ontracting officers are 'generally given wide discretion' in making responsibility determinations and in determining the amount of information that is required to make a responsibility determination." Impresa Construzioni, 238 F.3d at 1334-35 (quoting John C. Grimberg Co. v. United States, 185 F.3d 1297, 1303 (Fed. Cir. 1999)); NCL Logistics Co., 109 Fed. Cl. at 610; Afghan Am. Army Servs. Co. v. United States, 106 Fed. Cl. 714, 722 (2012). The Court "cannot substitute [its] judgment for that of the contracting officer in making responsibility determinations." Bender Shipbuilding & Repair Co. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002). "When such decisions have a rational basis and are supported by the record, they will be upheld." Id. Furthermore, judicial review is extremely deferential "in an area at the intersection of national security, foreign policy, and administrative law." See NCL Logistics, Co., 109 Fed. Cl. at 627 (quoting Islamic Am. Relief Agency v. Gonzales, 477 F.3d 728, 734, (D.C. Cir. 2007)).  Upon review of the classified AR, the Court concludes that the Agency's ineligibility determination of UBCC was rational and supported by the record.

As the remainder of the Court's opinion refers to classified material, it is contained in the classified addendum. The classified addendum was filed on April 29, 2015, with a United States Department of Justice Classified Information Security Officer. The classified addendum also contains additional findings of fact.

## Conclusion

The Court issues the following orders:

1. Plaintiff's motion to supplement the AR is **DENIED.**

2. Defendant's unopposed motion to amend the AR is **GRANTED**, and the Court adds the following documents to the AR: the independent Government cost estimate, USAID's price analysis of initial proposals and final proposals, and the GAO decision dismissing Plaintiff's protest.

3. Plaintiff's motion for judgment on the AR and for injunctive relief is **DENIED**.

4. Defendant's motion for judgment on the AR is **GRANTED**.

The Clerk is directed to enter judgment accordingly.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**